IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRANCHESA AKINS and
ATLANTA ASSOCIATION OF
CLASSIFIED EMPLOYEES,

      Plaintiffs,

v.

                        CIVIL ACTION NO.
                        1:15-CV-0364-ELR-LTW

ATLANTA INDEPENDENT SCHOOL
SYSTEM, et al.,

      Defendants.

**MAGISTRATE JUDGE'S ORDER AND
FINAL REPORT AND  RECOMMENDATION**

This case is presently before the Court on Defendants' Motion for Summary Judgment (Doc. 89), and Plaintiffs Franchesa Akins and the Atlanta Association of Classified Employees' (together, "Plaintiff" or "Akins") Motion for Leave to Amend Complaint ("Motion to Amend," Doc. 123); Motion for Extension of Time to File Response to Docket Entries 124-127 ("Motion to Extend," 129); Notice of Objection and Motion to Strike and/or Exclude Docket Entries 125 and 126, or in the Alternative, Motion for Leave to File Sur-Replay ("Motion to Strike," Doc. 132); and Motion for Sanctions Re: Defendants' Unauthorized, Untimely, and Irrelevant Supplemental Material with Brief in Support ("Motion for Sanctions," 139).  For the reasons discussed below, this Court **RECOMMENDS** that Defendants' Motion for Summary Judgment

be **GRANTED** with regard to Plaintiff's federal law claims, and that Plaintiff's state law claims be **REMANDED** to the Superior Court of Fulton County.  (Doc. 89). Additionally, Plaintiff's Motion to Amend is **DENIED** (Doc. 123), Motion to Extend is **GRANTED** (Doc. 129), Motion to Strike is **DEEMED MOOT** (Doc. 132), and Motion for Sanctions is **DEEMED MOOT** (139).

## INTRODUCTION

In this case, Plaintiff Akins and her representative assert claims on her behalf for (1) a writ of mandamus; (2) violations of the Georgia Open Records Act, O.C.G.A., § 50-18-70, et seq. ("GORA"); (3) violations of the Georgia Open Meetings Act, O.C.G.A., § 50-14-1, et seq. ("GOMA"); (4) interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; (5) violations of the of the Georgia Whistleblower Act, O.C.G.A., § 45-1-4, et seq. ("GWA"); and (6) attorney's fees under O.C.G.A., § 13-6-11.  (Sec. Am. Compl., Doc. 23).[1]

In her Second Amended Complaint, Plaintiff alleges she was an AISS employee for nineteen years, and worked at Sutton Middle School ("Sutton" or the "School") from 2009 through 2014.  In 2013, a Secretary position at Sutton became vacant, and Plaintiff and others submitted applications to the then-current principal of the School, Audrey Sofianos ("Sofianos").  Around that time, Plaintiff requested and was granted FMLA leave, but alleges that she was never given an interview for the open position.  Plaintiff

---

[1] This case was original filed in the Superior Court of Fulton County (Civil Action File No. 2014-CV-255275).  However, on February 2, 2015, Defendants removed the case to this Court.  (Doc. 1).

2

submitted a complaint because she was not allowed an interview, and in response, was told that she was not interviewed because she took FMLA leave. (Sec. Am. Compl. ¶¶ 13-14, 84-90).

Plaintiff alleges that after she returned from FMLA in April 2014, Sofianos (1) told Plaintiff that her FMLA leave caused problems, (2) was hostile towards Plaintiff, (3) harassed Plaintiff, and (4) otherwise embarrassed Plaintiff in front of co-workers. Plaintiff alleges she submitted another complaint to human resources ("HR") in late April 2014 documenting and complaining of Sofianos's harassment. (Sec. Am. Compl. ¶¶ 90-99). Plaintiff also alleges that after she submitted her complaint, Sofianos's treatment of her worsened, with Sofianos going so far as ridiculing her and moving Plaintiff from her office to the hallway, without a computer, telephone files, or supplies, all of which were necessary for Plaintiff to perform her job. An HR investigator informed Plaintiff because Sofianos planned to resign at the end of the school year, Sutton would not take any official action against Sofianos. (Sec. Am. Compl. ¶¶ 90-99)

After the end of the 2013-2014 school year, Plaintiff believed that her return-to-work date for the 2014-2015 school year was July 24, 2014. Plaintiff alleges that to the extent she was mistaken in this belief, it was the result of being blocked from her work e-mail account after filing an EEOC charge of discrimination, changes in Sutton's administration, and various changes in scheduling at the School. Due to a series of unfortunate events in July 2014, Plaintiff was temporarily homeless and had personal items and her identification stolen. Despite multiple alleged calls to the school to

confirm her start date and notify the school of her circumstances, Plaintiff received no answer.  Prior to July 24, 2014, Plaintiff called and left multiple messages, explaining that she needed to take leave until July 28, 2014, to replace her identification and repair her vehicle.  Plaintiff also again left her personal contact information.  On July 25, 2014, Plaintiff called again, and was able to notify the new Principal, Woodbridge Greene ("Greene"), of her circumstances.  (Sec. Am. Compl. ¶¶ 15-22).

Plaintiff alleges that when she returned to work on July 28, 2014, she met Greene for the first time, explained her situation, and provided him with supporting documentation; Greene allegedly yelled at her in a disrespectful and unprofessional manner, told her he did not believe her, and informed her that he was going to forward her documentation to HR.  Plaintiff lodged a complaint against Greene with HR, and was told by an HR representative that she would be offered a job transfer.  Two days later, two HR representatives, Devetrice Hinton ("Hinton") and Richard Beaulieu ("Bealieu"), visited the School and advised Plaintiff and Greene to put their differences behind them and carry on with their jobs.  (Sec. Am. Compl. ¶¶ 23-29).

A couple weeks later, however, Hinton notified Plaintiff that Greene had recommended her employment be terminated because Plaintiff had voluntarily abandoned her position with AISS.  Plaintiff received a letter from Pamela Hall ("Hall"), the Chief Human Resources Officer, reflecting the same.  Plaintiff returned to work the following day because she did not think she had abandoned her job.  Thereafter, Hinton returned to the School, told Plaintiff that she was being terminated, and escorted her off

4

the premises again.  Plaintiff contends that she did not abandon her position, and that she followed the proper procedures for reporting her absences due to emergency circumstances.  Additionally, Plaintiff alleges she has attempted to reverse the termination decision in multiple ways through communications with various AISS leadership, but that AISS has not returned her to work.  (Sec. Am. Compl.  ¶¶ 30-34).

According to Plaintiff, Defendant Meria Joel Carstarphen ("Carstarphen") is Superintendent and CEO of AISS, and the other individually-named Defendants are members of the Atlanta Board of Education (the "Board").  Plaintiff contends that Carstarphen and the Board have, pursuant to state statute and AISS policy, a duty to provide a disciplinary conference before termination decisions are made, that she has a right to be afforded an appeal of a termination decision, and that her rights were violated when she was discharged without a conference and appeal.  Plaintiff seeks a writ of mandamus compelling the Superintendent and the Board members to perform their mandated duties in providing a disciplinary hearing and appeal of the termination decision.  (Am. Compl. ¶¶ 5-6, 35-49).

In addition to her mandamus request, Plaintiff alleges AISS violated the FMLA. In particular, Plaintiff claims that (1) Sofianos's decision not to interview her for the Secretary position because she was on FMLA leave constituted FMLA interference; (2) Sofianos's harassment and treatment upon her return from FMLA leave at the end of the 2013-2014 school year was retaliation for Plaintiff taking FMLA leave; and (3) her termination at the beginning of the 2014-2015 school year was retaliation for taking

FMLA leave.  (Sec. Am. Compl. ¶¶ 84-99).

Along similar lines, Plaintiff contends that as a public employee, under the GWA, she was protected from retaliation for making complaints that disclosed AISS's noncompliance with federal law, as well as with its own policies and regulations. Plaintiff asserts that AISS is liable for retaliation under the GWA based on Sofianos's treatment of Plaintiff following her earlier complaints, and for the termination of her employment following the later complaints.  (Sec. Am. Compl. ¶ 100-109).

Beyond the employment-related claims, Plaintiff asserts a number of other state law claims.  First, Plaintiff contends that AISS violated GORA when AISS failed to produce records of the voicemails she purportedly left with the school upon request. (Sec. Am. Compl. ¶¶ 50-71).  Next, Plaintiff alleges AISS violated the GOMA because AISS has not made available meeting agendas or summaries of at least a number of public meetings of the Board in which actions were taken – including actions relating to her.  (Sec. Am. Compl. ¶¶ 72-83).  Finally, Plaintiff seeks attorney's fees pursuant to O.C.G.A. § 13-6-11 based upon Defendants' unlawful conduct described above, and the fact that Defendants did nothing to resolve Plaintiff's concerns prior to the present litigation.  (Sec. Am. Compl. ¶¶ 110-115).

## **PLAINTIFF'S MOTION TO AMEND**

## I.   **Procedural Background**

Plaintiff filed this lawsuit on December 23, 2014, in the Superior Court of Fulton County seeking relief by way of a petition for writ of mandamus, and pursuant to GORA,

6

the FMLA, and the Georgia attorney's fees statute, all in relation to the alleged wrongful termination of her employment from AISS.  (Doc. 1).  Defendants removed the case to this Court on February 5, 2015, and moved to dismiss the case later that month.  (Docs.1, 3).  On May 20, 2015, Plaintiff then moved to for leave to amend the complaint to add and clarify factual allegations and to assert new claims under GOMA, GWA, and to add additional parties to both sides of the litigation.  (Doc. 11).  In August 2015, this Court recommended that certain of Plaintiff's GORA claims be dismissed from the action but otherwise allowed Plaintiff's amended claims to proceed.  (Doc. 14).  The District Court adopted this Court's Report and Recommendation, with the exception that  Plaintiff would be given an opportunity to amend her Complaint in order to more plausibly state one GORA claim.  (Docs. 14, 21).  In response to this Court's Order, Plaintiff amended her Complaint a second time on October 6, 2015.  (Doc 23).

Defendants answered the Complaint on November 5, 2015, and discovery was initially set to close on April 4, 2016.  (Doc. 29).  The discovery period was extended multiple times and ultimately expired in July 2016.  (Docs. 47, 71, 85, 88).  The case required significant Court intervention to resolve discovery disputes.  (See June 16, 2016 Docket Entry date; Doc. 85).

Defendants moved for summary judgment on August 15, 2016.  (Doc. 89).  As discussed in detail below, Defendants contend that all of Plaintiff's claims against them should be dismissed.  (Id.).  On September 20, 2016, Plaintiff moved for an extension of time to respond to Defendants' Motion for Summary Judgment, which was granted,

providing Plaintiff until September 30, 2016, to file her response. (Docs. 100, 103). On September 30, 2016, Plaintiff again moved for an extension of her response deadline. (Doc. 106). Before Defendants or the Court could address the motion, and on the newly requested deadline date, Plaintiff amended that second motion to extend the response deadline even further. (Doc. 110). Over a week later, Plaintiff also moved for leave to exceed the page limit for her response to Defendants' summary judgment motion. (Doc. 112). Finally, on October 20, 2016, well after the newly requested (and amended) deadline to respond, Plaintiff filed a motion for leave to file her response beyond the time frame permitted (or requested). (Doc. 116).[2] Plaintiff proceeded to file her response on October 26, 2016 (Doc. 118), which this Court accepted out of time (See Oct. 27, 2016 Docket Entry date).

Weeks later, and less than one week before Defendants' summary judgment reply was due, Plaintiff moved to for leave to amend her complaint again on November 15, 2016, adding new claims and/or theories of recovery. (Doc. 123). This time, Plaintiff seeks to assert two separate due process claims under 42 U.S.C. § 1983 ("Section 1983") and to assert additional bases for her GWA claim.[3] (Id.). Plaintiff acknowledges the late

---

[2] In that final request, Plaintiff admits that part of the delay was due to the fact that she served supplemental documental productions on October 4 and 6, 2016, months after discovery closed, and over a month after Defendants moved for summary judgment. (Doc. 116, at 3-4).

[3] Plaintiff also seeks to substitute Franchesa Favors for Franchesa Akins as the named plaintiff in this action, based upon Plaintiff's divorce during the course of the litigation; Defendants consented to that substitution in May 2016 (see Doc. 123-2), and as such, the substitution is **GRANTED** irrespective of the rest of the Motion to

filing of the Motion to Amend, but argues that the requested amendments would be "neither unduly burdensome on the Court nor prejudicial to the Defendants," and that delay alone should not preclude the amendment. (Id., at 6-7). Plaintiff also contends that the new allegations supporting her claims under GWA represent well-known facts uncovered during discovery. (Docs. 123, 133).

Defendants oppose Plaintiff's Motion to Amend, and argue that Plaintiff has unduly delayed filing her motion and does not proffer any viable explanation for why she waited to request to amend her Complaint until well after the close of discovery and the filing of Defendants' summary judgment motion. Defendants contend that the delayed filing was unjustified because Plaintiff was aware of the facts and circumstances regarding Defendants' actions and Plaintiff's potential causes of action at the time Plaintiff filed her original Complaint, Amended Complaint, and/or Second Amended Complaint. Defendants also argue the proposed amendments would be prejudicial to them and are, irrespective of other defects, futile. (Doc. 128).

## II.  <u>Legal Analysis</u>

Based on the facts presented in this action, this Court finds that Plaintiff should not be permitted to amend her Complaint. Pursuant to the Federal Rules of Civil Procedure, leave to amend a party's pleading shall be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The court has discretion to make this determination, but it must provide a substantial reason for such a denial because "Rule 15(a) severely

---

Amend.

restricts the district court's freedom." <u>Shipner v. E. Air Lines</u>, 868 F.2d 401, 407 (11th Cir. 1989) (policy embodied in Federal Rules of Civil Procedure favors liberality of amendments).   However, both the Supreme Court and the Eleventh Circuit have enumerated factors which allow the denial of a motion to amend.  These factors include undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failures to cure deficiencies by previous amendments. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape</u>, 556 F.3d 1232, 1241 (11th Cir. 2009).  "An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted," would otherwise be subject to dismissal, or if the amendment would be immediately subject to summary judgment for defendant.  <u>Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commnc'ns, Inc.</u>, 376 F.3d 1065, 1077 (11th Cir. 2004); <u>Galindo v. ARI Mut. Ins. Co.</u>, 203 F.3d 771, 777 n.10 (11th Cir. 2000); <u>see also McLaughlin v. Pasco Cty. Sheriff's Office</u>, 510 F. App'x 880, 883 (11th Cir. 2013) (citing <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007)).

### A.    <u>Undue Delay</u>

Defendants contend that Plaintiff has unduly delayed her request to amend because she has filed it approximately two years after her lawsuit was filed, despite being aware of the facts and circumstances supporting the additional new claims since the beginning of the case. (Doc. 128).  Plaintiff seeks to avoid this conclusion by arguing that the delay was excusable because Plaintiff's counsel only uncovered the legal theories and/or facts

supporting Plaintiff's new allegations and/or claims while preparing the response to Defendants' Motion for Summary Judgment, and because the amendments do not "change the nature of the facts and claims in the action" so as to require additional discovery or briefing.  (Doc. 133).

Neither argument provided by Plaintiff excuses her delay in filing her request to amend, because as noted above, the information necessary to assert the new claims was available to Plaintiff at the inception of her lawsuit.  Plaintiff is correct in asserting that the lengthy nature of litigation, without any other evidence of prejudice to Defendants, or bad faith on her part justifies denying her an opportunity to amend her complaint. Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1186 (11th Cir. 2013); Burns v. Winnebago Indus., 492 F. App'x 44, 46-47 (11th Cir. 2012).  Prejudice, however, is especially likely to exist if the amendment involves new theories of recovery or requires additional discovery.  Tampa Bay Water, 731 F.3d at 1186 (finding prejudice because amendment offered new claims after the close of discovery and the defendant would be required to investigate the facts and prepare to defend against the new claims requiring additional discovery and further delay before trial).  Moreover, a district court may find undue delay when the movant knew of facts supporting a new claim long before the movant requested leave to amend, and the amendment would further delay the proceedings.  Tampa Bay Water, 731 F.3d at1186.  Where the plaintiff had enough information to state such new claims well before the end of the discovery period, the district court does not abuse its discretion by finding undue delay when the plaintiff

sought approval for the amendment after the close of the discovery period.  <u>Tampa Bay Water</u>, 731 F.3d at 1187.

In this case, Plaintiff has unduly delayed her request to amend the Complaint, and to allow Plaintiff to amend at this late stage would prejudice Defendants.  In particular, Plaintiff's new claims under Section 1983 could have been asserted prior to the close of discovery, if not at the inception of the lawsuit, based upon facts known to Plaintiff at that time, and Plaintiff fails to explain why she could not have previously brought these new claims.  All of the facts necessary to bring the claim were available to Plaintiff before she initially filed her lawsuit and Plaintiff has failed to point to anything to suggest they were not.  Plaintiff, therefore, fails to present reasonable justification as to why she waited until approximately two years after she filed her original Complaint, almost five months after discovery closed, three months after Defendants moved for summary judgment, and weeks after she responded to Defendants' motion, to request an amendment to add the aforementioned claims.  Ultimately, Plaintiff could have included the new proposed claims in her earlier amendments, but did not.

### B.    <u>Prejudice to Defendants</u>

This Court also finds that Plaintiff's delay in filing these new claims is prejudicial to Defendants.  Discovery has been completed, and if Defendants had known about Plaintiff's new claims, Defendants could have directed their discovery efforts to each of the aforementioned claims.  Instead, Defendants would likely require discovery on the new claims.  Additionally, Defendants have already filed their summary judgment

12

motions, incurring expense on behalf of their client.  While Plaintiff indicates that the parties should not require further discovery or briefing, at least one of her two new Section 1983 claims – the one addressing a pre-termination deprivation of her due process rights – focuses on events that are not fully addressed or resolved by the pending summary judgment briefs before the Court.  As a result, additional discovery and summary judgment briefing would be required on Plaintiff's pre-termination claim.  If Plaintiff had acted sooner to amend her Complaint, such discovery could have occurred during the discovery period, thus avoiding costly multiplication of discovery efforts and further delay and costs.

Plaintiff also seeks to avoid denial of her request to amend by asserting that she had essentially included the new Section 1983 claims in the Second Amended Complaint.  In support, Plaintiff points to Count One, her petition for a writ of mandamus.  Therein, Plaintiff alleges that "[p]ursuant to Georgia law, the [AISS] Charter, and Board policy," Defendants Carstarphen and the Board had clear, ministerial, non-discretionary duties to provide specific complaint and grievance procedures, a disciplinary hearing, and an appeal of any adverse action, and that they deprived her of her right to those when they failed to implement those procedures after Plaintiff was terminated.  (Am. Compl. ¶¶ 35-49).  In essence, based on Plaintiff's petition, Plaintiff seeks to have the Court force Defendants Carstarphen and the Board members – public officials – to perform their non-discretionary tasks under Georgia law, the AISS Charter, and Board policy.  That is because, in order to be entitled to mandamus relief, a plaintiff

13

must demonstrate that there has been a default by a public official of a required duty, that the duty is one required by law, that there is a clear legal right to the relief sought, and that there is no other legal remedy available. Cotton v. Jackson, 216 F.3d 1328, 1332 (11th Cir. 2000) ("Under Georgia law, when no other specific legal remedy is available and a party has a clear legal right to have a certain act performed, a party may seek mandamus.") (citing O.C.G.A. § 9-6-20); Chambers v. Fulford, 268 Ga. 892, 892-893, 495 S.E.2d 6, 7-8 (1998) (the "right to extraordinary aid of mandamus exists only where the applicant has a clear legal right to the relief sought, and there is no other adequate remedy").

In the proposed Third Amended Complaint, however, Plaintiff now asserts that (1) she had a protected property interest in her employment under the Georgia and United States Constitutions that may be vindicated by Section 1983; (2) not only Carstarphen and the Board, but also AISS, violated her "pre-[ and post-]deprivation procedural due process rights" when they "failed to provide her with notice and an opportunity to be heard [both] prior to terminating her" and "after terminating her"; and (3) none of the Defendants are subject to immunity under the Section 1983. (Doc. 123-3, ¶¶ 35-54). Thus, rather than a simple writ of mandamus compelling public officials to perform a duty that is non-discretionary when no other legal remedy is available, it is clear that Plaintiff now seeks compensatory damages and equitable relief against AISS, and to do so must establish, under the theory she pursues, that AISS had a policy, custom, or practice that constituted deliberate indifference to her constitutional rights. See Sauls v.

14

Pierce Cty. Sch. Dist., 399 F.3d 1279, 1287 (11th Cir. 2005) (citing  Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997) ("To impose liability on a municipality [like a school district] under § 1983, the plaintiff must identify a municipal "policy" or "custom" causing the deprivation of federal rights.").  Furthermore, the Eleventh Circuit has held that where a writ of mandamus would provide a process to remedy a due process deprivation, a Section 1983 claim is not actionable.  Cotton, 216 F.3d at 1332-33 (holding that where writ of mandamus was available to compel hearing in relation to discharge of state employee, plaintiff failed to state a claim for procedural due process violation under Section 1983) (citing Horton v. Bd. of Cty. Comm'rs, 202 F.3d 1297, 1300 (11th Cir. 2000); Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999); Harris v. Bd. of Educ., 105 F.3d 591, 596 (11th Cir.1997); McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994); and Tompkins v. Bd. of Regents, 262 Ga. 208, 417 S.E.2d 153, 154 (1992), among others).  Because of this, the Court concludes that Plaintiff's prior petition for a simple writ of mandamus is fundamentally different from Plaintiff's new claims under Section 1983.[4]

Moreover, discovery and additional briefing would be necessary into (1) the extent of Plaintiff's alleged constitutionally-protected rights; (2) more precisely what right to notice and/or opportunity to be heard Plaintiff was deprived of prior to her termination; (3) whether AISS had any policy, custom, or practice that constituted indifference to that

---

[4] The Court acknowledges that a plaintiff may plead in the alternative; however, a petition for a writ of mandamus is fundamentally different from a claim for due process violations under Section 1983.

right; (4) whether that policy, custom, or practice actually caused a violation of Plaintiff's rights; and (5) the extent to which any Defendant might claim qualified immunity with regard to any right violated. (See e.g., Doc. 118-1, p. 25 (Plaintiff discussing why Defendants' Motion for Summary Judgment should not be granted based upon factual issues related to Section 1983 claims, separately from the arguments regarding Plaintiff's petition for writ of mandamus)). Discovery has been completed, and if Defendants had known about Plaintiff's new claims, Defendants could have directed their discovery efforts to each of the new claims. Likewise, Defendants have already filed their summary judgment motions, incurring significant expenses, and those motions and arguments would need to be rebriefed in relation to the new claims.

Because Plaintiff unduly delayed filing her Motion to Amend, and because allowing the amendment would prejudice Defendants, Plaintiff's Motion to Amend is **DENIED**. (Doc. 123).

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment on all of Plaintiff's claims. First, Defendants argue summary judgment should be granted on Plaintiff's mandamus claim because, pursuant to AISS policy, Plaintiff was deemed to have abandoned her job when she failed to report on time for the beginning of the school year; as a result, a disciplinary conference and an appeal are unavailable under AISS policy. Second, Defendants argue Plaintiff's GORA claims are barred by res judicata, that Plaintiff lacks standing to bring such claims, and that, regardless, AISS actually responded timely and properly to all the

16

requests made pursuant to GORA.  Third, Defendants contend that Plaintiff's GOMA claims fail because they are time barred, because AISS complied with GOMA's requirements, and because Plaintiff is not entitled civil penalties or attorney's fees under GOMA.  Fourth, Defendants argue summary judgment is warranted on Plaintiff's FMLA interference and retaliation claims because she cannot establish that any FMLA right was interfered with, that she suffered an adverse employment action, or that any causal connection exists between her use of FMLA leave and any adverse employment action. Additionally, Defendants argue collateral estoppel bars Plaintiff's FMLA claims.  Fifth, Defendants argue, for the same reasons, Plaintiff's GWA claims fail.  Sixth, Defendants contend that the Defendants Castarphen, Courtney D. English, Nancy M. Meister, Byron D. Amos, Cynthia Briscoe Brown, Eshé P. Collins, Jason G. Esteves, Leslie Grant, Steven D. Lee, Matt Westmoreland (together, the "Individual Defendants") are entitled to qualified immunity.  Finally, Defendants argue that because summary judgment should be granted as to all of the substantive claims above, Plaintiff's claim for attorney's fees also fails.  (Doc. 89).

I.    **FACTUAL BACKGROUND**

   A.    **Consideration of the Parties' Statements of Undisputed Facts**

   All facts taken directly from the Defendants' Statement of Undisputed Material Facts (hereinafter "DSMF") or Plaintiff's Statement of Additional Material Facts ("PSMF") remain undisputed.  This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the

17

relevant portions of the record by the opposing party.  LR 56.1B.2(2), (3), NDGa.
Subjective perceptions, conclusory allegations, or allegations that are otherwise
unsupported by record evidence do not create genuine issues of material fact in order to
withstand summary judgment.  See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34
(11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997);
Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989).  Thus, this Court will not
consider any undisputed fact (1) not supported by citation to evidence (including a page
or paragraph number); or (2) stated as an issue or legal conclusion.  Additionally, this
Court will assess any objections to the admissibility of any evidence presented through
declarations or any other method as part of its assessment of Defendants' Motion for
Summary Judgment.  The Court will then rule on the evidence implicitly or explicitly in
the consideration of the motion.  See Linscheid v. Natus Med. Inc., No. 3:12-CV-67-TC,
2015 WL 1470122, at *1 (N.D. Ga. Mar. 30, 2015) (considering objections when the
challenged evidence became relevant to the decision on the motion); Smith v. Se. Stages,
Inc., 479 F. Supp. 593, 594-95 (N.D. Ga. 1977).

In her Motion to Extend, Plaintiff sought four additional days to address certain
of Defendants' filings that she considers improper.  (Doc. 129).  That motion is
**GRANTED**.  (Doc. 129).  In her Motion to Strike – one of the filings made upon the
requested extension now granted – Plaintiff asks the Court to exclude Defendants'
submissions in opposition to Plaintiff's own response to DSMF (Doc. 125), and to
exclude certain arguments contained in Defendants' response to PSMF (Doc. 126), since

they do not comply with the Local Rules.  (See Doc. 132).  Because the Court considers the facts presented in DSMF and PSMF as outlined above, in compliance with the Local and Federal Rules, as well as other applicable law, the request is **DEEMED MOOT**. (Doc.  132).[5]  To the extent Plaintiff also seeks sanctions, that request is **DENIED**, because there is no evidence of bad faith or delay on the part of Defendants (certainly no more than Plaintiff in the delayed filing of her own response to Defendants' Motion for Summary Judgment, late productions, and submission of a Motion to Amend at the penultimate point in summary judgment briefing).  (Doc. 132).

## B.    **AAIS, the Board, and their Policies**

AAIS is a public school district under the management of the Board.  (DMSF ¶ 1). The Board's powers include, but are not limited to, approving the budget, adopting policy, and hiring and evaluating the performance of the Superintendent, and hearing appeals from employees who have suffered adverse employment actions.  (DSMF ¶¶ 4, 5).

AISS's anti-discrimination and retaliation policies provide, in part, that any AISS employee who violates these policies will be subject to disciplinary action up to and including termination.  (Deposition of Franchesa Lashawn (Akins) Favors, dated May 7, 2016, ("Pl.'s Dep"), Doc. 94,  Ex. 28 (Employee Handbook), at  9-13).  The policies also provide a reporting procedure through which employees can report ethical or policy

---

[5]  Along similar lines, the objection by Defendants to Plaintiff's use of certain evidence not disclosed during the discovery period is **DEEMED MOOT**, since the Court need not consider it in deciding the pending motions.  (Doc. 127).

violations to AISS' independent hotline, his or her direct supervisor, the Office of Internal Compliance, or the ethics officer in AISS's legal department. (Id.). The policy states that complaints must be filed within ten days of any incident, and prohibits retaliation for good faith reporting or cooperation with an investigation of discrimination or harassment. (Id.). The handbook is made available to employees by AISS and Sutton; Plaintiff testified that she knew her school had a handbook, but was not sure if she received a copy directly. (Pl.'s Dep. 123, 342; Deposition of Woodbridge Greene, dated May 31, 2016 ("Greene Dep"), Doc. 97, 189-90, Ex. 7).

### C.    Plaintiff's Employment

Plaintiff was hired by AISS in November 1995, and remained employed with AISS for nineteen years. (Pl.'s Dep. 33). While at AISS, Plaintiff held several job titles, which included Clerical Paraprofessional, Classroom Paraprofessional, and School Clerk. (Pl.'s Dep. 34-38). Plaintiff transferred to Sutton in August 2009 as a School Clerk; at the end of her employment, Plaintiff states that she was a School Clerk II. (Doc. 89-17 (Transfer Notice); Affidavit of Franchesa Akins, dated Dec. 22, 2014, ("12-22-14 Pl.'s Aff..") Doc. 118-3, ¶ 5). AISS School Clerks are responsible for, among other things, tracking students' attendance and disciplinary offenses; greeting school visitors; answering telephones; drafting letters, contracts, reports, memoranda, and other documents; receiving, sorting, and distributing mail; preparing and issuing bid documents; administering and/or supporting the state and local standardized testing process and policies; and conducting other duties as requested by the Principal and

Assistant Principals.  (Pl.'s Dep. 34; 148-150; <u>see also</u> Docs. 89-18 (AISS's Responses to Plaintiff's First Set of Interrogatories); 89-19 (School Clerk job description).  Even so, Plaintiff testified that she had additional responsibilities after a school Secretary left – in particular, timekeeping responsibilities.  (12-22-14 Pl.'s Aff. ¶ 22).

From 2009 to 2014, Audrey Sofianos was the Principal at Sutton and supervised Plaintiff.  (DSMF ¶ 32).  Likewise, Assistant Principals Michelle Bouldin, Timothy Robinson, Barbara Bieniemy, and the Secretary, Jacqueline Middlebrooks, also supervised Plaintiff.  (DSMF ¶ 33).  While employed with AISS, Plaintiff had annual performance reviews that were conducted by the Principal, Assistant Principals, and/or Secretary.  (Pl.'s Dep. Exs. 3, 5, 6, 7).

### D.    Open Secretary Position

During the 2013-2014 school year, Sutton's Secretary, Claudia Landers ("Landers"), became ill and had to take several leave of absences.  (DSMF ¶ 36). Sometime in or around December 2013, Landers left Sutton, and around that time, Sutton posted on the AISS website that it had an immediate opening for a new Secretary.  (Pl.'s Dep. 93-94; DSMF ¶ 38).  Plaintiff testified that she applied for the open Secretary position that month.  (Pl.'s Dep. 93-94).  Jacqueline Middlebrooks ("Middlebrooks"), another School Clerk at Sutton, also applied for the position.  (DSMF ¶ 41).

Plaintiff testified that she had been told by Sofianos that she was on the list to be interviewed in mid-December, but that Sofianos did not thereafter schedule her interview; as Sofianos explained to Plaintiff via email, interviews would not begin until

21

the first week back from winter break.  (12-22-14 Pl.'s Aff. ¶ 8; Declaration of Audrey Sofianos, dated Aug. 5, 2016 ("Sofianos Dec."), Doc. 89-22, ¶ 4, Ex. A).  On January, 3, 2014, Sofianos emailed Plaintiff to inform her that her application could not be located in the online database, and told her to complete an online application if she wanted to be considered.  (Doc. 89-26 (Jan. Email Correspondence)).  The following day, Plaintiff emailed Sofianos and stated that she had re-applied for the position.  (Id.).  By January 14, 2014, Sofianos emailed Sutton faculty and staff, informing them that there were over 800 applicants for the position (more applicants than she could recall applying for any position), who she could not possibly screen adequately, and asked that faculty and staff inform her of anyone they knew who had applied.  (Doc. 89-25 (Sofianos Email, dated Jan. 14, 2014); see also Sofianos Dec. ¶ 3).  Sofianos testified that because of Plaintiff's experience and work ethic, she (Plaintiff) was a top candidate for the School Secretary position, and that Sofianos always intended to interview Plaintiff for the position. (Sofianos Dec. ¶¶ 6-7).    However, Plaintiff was not interviewed.  Plaintiff testified that on January 8, 2014, she found out another School Clerk had an interview actually scheduled, either that same day or soon after.  (12-22-14 Pl.'s Aff. ¶ 9).  This upset Plaintiff "tremendously and caused [her] to suffer from a serious health issue," that required overnight hospitalization and forced her to take leave from school on January 8, 2014. (Id. ¶¶ 9-10; Sofianos Dec.  ¶¶ 7, 10; see also Docs. 90-1, 90-2, 90-3 (FMLA related materials).  Within approximately a week, Plaintiff had submitted for FMLA leave, which was ultimately extended and approved through April 21, 2015.  (Id.).

Sofianos testified that because there was an immediate need to fill the Secretary position, and because it was uncertain when Plaintiff was going to return from leave, she (Sofianos) had to move forward with the selection and hiring process without having an opportunity to interview Plaintiff.  (Sofianos Dec. ¶ 9).

After Human Resources screened and narrowed the 800 applicants to 600, Sofianos further screened those candidates and narrowed the applicant pool to 30 candidates.  (DSMF ¶ 45).  Subsequently, the interview pool was further narrowed to eight candidates, with three candidates advancing to the final interview.  (DSMF ¶ 46). While Plaintiff testified that another School Clerk might have had an interview scheduled previously, Sofianos testified that final interviews – by Sofianos and a panel of faculty and staff – took place on or around January 21, 2014.  (Sofianos Dec. ¶¶ 9-10; see also 89-22 (Sofianos Email dated Jan. 15, 2014, to Sutton faculty and staff stating second and/or final interviews would take place on January 21, 2014, despite any confusion regarding the date)).  Middlebrooks, another School Clerk, testified that she interviewed for the Secretary position at some point after the beginning of January 2014, and Sofianos testified that interviews took place on January 21, 2014.  (Id.; Deposition of Jacqueline Middlebrooks, dated June 2, 2016 ("Middlebrooks Dep."), Doc. 100, 41-42). Middlebrooks was ultimately recommended and selected for the Secretary position. (DSMF ¶ 47).  In a January 23, 2014 email to Sutton faculty and staff about the selection, Sofianos noted that Middlebrooks had worked for AISS since 1999, had a Bachelors in Social Work, a Masters in Public Administration, and the skills, aptitude, and

23

competency appropriate for the Secretary position.   (Doc. 89-27).   Jacqueline Middlebrooks transitioned into the role of Secretary during Plaintiff's leave, having already assumed all of the Secretarial duties from the time Landers and Plaintiff departed.  (DSMF ¶ 49; Middlebrooks Dep. 83-84).

According to Plaintiff, on or around January 21, 2014, – while out on FMLA leave – she submitted a "complaint" to Human Resources, detailing in narrative format her working history and prior complaints about superiors, and complaining that she was not interviewed or selected for the Secretary position. (12-22-14 Pl.'s Aff. ¶ 11, Ex. 1).  The complaint does not reference Plaintiff's FMLA leave or any unlawful discrimination or retaliation.  (Id.).  Although Sofianos testified that she was not aware of the complaint, Plaintiff testified that Sofianos told her shortly thereafter that the reason Plaintiff was not interviewed for the position was that she was out on FMLA leave.  (12-22-14 Pl.'s Aff. ¶ 12).  As noted, Sofianos admitted that because there was an immediate need to fill the Secretary position, and because it was uncertain when Plaintiff was going to return from her FMLA leave, she moved forward with the selection and hiring process without interviewing Plaintiff.  (Sofianos Dec. ¶ 9).

### E.   Plaintiff's FMLA Leave

After her overnight hospitalization the prior week, on Monday, January 13, 2014, Plaintiff emailed Sofianos to notify her that she was still feeling faint, like she was having a nervous breakdown, and on or about January 17, 2014, Plaintiff applied and was approved for FMLA leave.  (Doc. 90-1 (Jan. 13, 2014 Email from Pl. to Sofianos; DSMF

¶ 51).  Plaintiff's initial period of FMLA leave was from January 14, 2014, through February 17, 2014; but after Plaintiff's husband submitted additional paperwork showing that Plaintiff was not yet fit to return to work, this time period was extended.  (Doc. 89-30 (Pl.'s FMLA Request Form; Doc. 89-32 (Feb. 17, 2014 Email from Absence Management Specialist to Pl.); Doc. 89-34 (Facsimile from Pl.'s Husband to Absence Management Specialist); see also Docs. 89-36, 89-37, 89-38 (Emails regarding Return to Work).  After additional extensions, Plaintiff ultimately returned to work on April 21, 2014 (Id.; see also DSMF ¶ 60; 12-22-14 Pl.'s Aff. ¶ 13).

**F.      Plaintiff's Working Conditions upon Return**

Upon Plaintiff's return to work, there was a little more than a month left in the school year.  (Doc. 89-39 (School Calendar showing May 30, 2014 year-end)).  Plaintiff testified that at some point after returning from leave, Sofianos noted that Plaintiff's leave of absence caused a "strain on the school," because "nobody else knew what I was doing" or "knew how to do the work that I was doing."  (Pl.'s Dep. 90-91,  237).  Although Plaintiff testified that Sofianos harassed her and gave her more work duties and/or responsibilities than the other School Clerks upon her return, Plaintiff could not identify or explain exactly how she was harassed, what those additional assignments were, or how she had more work than the other Clerks.  (Pl.'s Dep. 167-71, 237-59; 12-22-14 Pl.'s Aff. ¶ 13-15).  On or around April 24, 2014, Plaintiff made an internal complaint to AISS, complaining that she was subjected to a "hostile environment" and was discriminated against and harassed by Principal Sofianos for "some" reason.  (Pl.'s

25

Dep. 293-40; Doc. 89-55 (Emailed complaint)).

Prior to taking FMLA leave, Plaintiff was the only school clerk with her own office space, though that was on a lower level of the school. (Pl.'s Dep. 138-40; Middlebrooks Dep. 139). Plaintiff testified that after her return, Sofianos asked Plaintiff, via email, to move out of the office "because it was the end of the year and she wanted [Plaintiff] to assist with the end-of-the-year activities." (Pl.'s Dep. 140). In that May 19, 2014 email, dated days before the end of the school year, Sofianos explained that Plaintiff's office would be put to use by special education programs the following year; that they needed to prepare for that transition; and that Plaintiff would need to move out "temporarily until May 28th," after which time Plaintiff would be set up where another, departing Clerk was currently located. (Id., see also Pl.'s Dep. 150-57, Ex. 10; Doc. 89-40 (May 19, 2014 Email from Sofianos to Plaintiff); Sofianos Dec. ¶ 11). Sofianos explained to Plaintiff that she would be moved temporarily to a table at the front of the building, to assist other Clerks with several projects, as well as registration for the following year. (Id.). Sofianos asked Plaintiff to "[l]et me know what documents or projects you are working on so that I can help you troubleshoot. Also, let me know what supplies you need to bring, and we can figure out how or where to store these." (Id.). Although Sofianos's email indicated that the three Clerks at Sutton would be sitting together there, one was not moved there,[6] and Plaintiff was the only one who did not have a computer or phone. (Id.; see also Pl.'s Dep. 155-59). Plaintiff testified that she

---

[6] One Clerk did sit next to Plaintiff at the front of the school.

and Sofianos never spoke about where her office items would be relocated to, and while Sofianos told her someone would assist her, no one ever did.  (Pl.'s Dep. 155-57). Plaintiff felt "humiliated" by being moved out of the office into the front of the building, even though she sat next to another Clerk.  (12-22-14 Pl.'s Aff. ¶ 15).   Plaintiff explained, in part, that her humiliation also stemmed from not having access to her computer, phone, and supplies, and as a result, not being able to work on her projects. (Pl.'s Dep. 170-71).  Plaintiff remained there until the end of the school year, May 30, 2014.  (Pl.'s Dep. 197-98).

At the time Sofianos requested Plaintiff relocate her work space to the front of the building, Sofianos was not aware of any complaints Plaintiff may have made to Human Resources prior to May 2014.  (Sofianos Dec. ¶ 12).  Sofianos testified that the decision to move Plaintiff had nothing to do with Plaintiff taking FMLA leave.  (Sofianos Dec. ¶ 12).

### G.   2014-2015 Academic School Year

In July 2014, Buck Greene ("Greene") replaced Audrey Sofianos as the Principal of Sutton Middle School.  (DSMF ¶ 71; PSMF ¶ 51).  Plaintiff testified that Sofianos had told her that her start date for the 2014-2015 academic school year would be July 24, 2014; and that she believed that date to be her start date simply because it had been that date the year before.[7]  (Pl.'s Dep. 283-84; 12-22-14 Pl.'s Aff. ¶ 18; see also Deposition

---

[7]  Defendants contend that Plaintiff's start date was July 22, 2014.  (See DSMF ¶ 74).

of Pamela Hall, dated June 9, 2016 ("Hall Dep."), Doc. 98, 234 (Plaintiff informed Hall that she, Plaintiff, was confused about the start date because of how she had done it in the past.).  Plaintiff sometimes checked the AISS calendar posted online to determine when she was required to report to work for the upcoming school year, though it is unclear whether she checked in the summer of 2014.  (Pl.'s Dep. 125-26).

Regardless, Plaintiff returned to work on July 28, 2014.  (Pl.'s Dep. 286; Greene Dep. 94).  Plaintiff states that the reasons for her absence were that (1) a that a pipe burst in her house, requiring her family to move out, and (2) her personal belongings, including her identification, were stolen and needed to be replaced.  (12-22-14 Pl.'s Aff. ¶¶ 19).  Prior to her return to work, Plaintiff did not speak with anyone on the phone or in person to explain her absences, but testified that she left multiple voice mail messages on the main Sutton telephone line and/or with co-workers.  (Pl.'s Dep. 291-92, 326-29; 12-22-14 Pl.'s Aff. ¶¶ 20-22).

On July 24, 2014, Greene contacted AISS's Human Resources to discuss Plaintiff's absence.  (Greene Dep. 38-39; see also Green Dep. 100 ("I informed HR that I have an employee that, as far as I was concerned, was no call/no show for four days, which is a day beyond where we would refer someone for job abandonment."). Devetrice Hinton, AISS's Employee Relations Manager, told Greene to send a letter to Plaintiff informing her that she was in violation of AISS and Sutton's absence policies. (DSMF ¶ 91).  Greene testified that he sent Plaintiff a letter the same day that he talked to Hinton.  (Greene Dep. 38-39).

On the day of her return to work, Greene met with Plaintiff to discuss her absences. (Greene Dep. 94-97). While Greene testified that he may have been firm and expressed disappointment with Plaintiff, Plaintiff testified that Greene was angry and frustrated, yelled at Greene, told her that her that documentation for her absences did not constitute an excuse, and allowed her to leave through a side door because she was so upset. (Id.; 12-22-14 Pl.'s Aff. ¶¶ 25-26). As of that time, Greene had been informed that Hinton would be coming out to the School to address Plaintiff's absences and to review Plaintiff's documentation, and Plaintiff testified that he (Greene) told her that Human Resources would need all the paperwork because they were asking for it. (Greene Dep. 94; 12-22-14 Pl.'s Aff. ¶ 25). Plaintiff said she asked if she could go home because she was upset, and Greene allowed her to, saying he would take care of clocking her out. (Greene Dep. 97;12-22-14 Pl.'s Aff. ¶ 26).

**H.   Investigation of Absences and Termination of Plaintiff's Employment**

After the meeting, both Greene and Plaintiff spoke with Human Resources. Greene called Hinton and explained briefly what Plaintiff shared regarding her absence; Hinton told Greene that she (Hinton) would contact and meet with Plaintiff. (Greene Dep. 97). Plaintiff states that after the meeting, she and her husband went to Human Resources and submitted a complaint to Rick Beaulieu, the Executive Director of Human Resource Informational Systems, about Greene's alleged "unprofessional, intimidating, and rude behavior towards Plaintiff." (12-22-14 Pl.'s Aff. ¶ 27; Hall Dep., 54-55). Plaintiff did not testify that she complained about FMLA interference or retaliation.

29

On July 30, 2014, Hinton and Beaulieu came to Sutton to meet with Plaintiff to address and resolve the issue of Plaintiff's alleged failure to report her intended absences and Plaintiff's complaint two days earlier regarding Greene's alleged unprofessional behavior. (PSMF ¶ 58; 12-22-14 Pl.'s Aff. ¶ 28; Greene Dep. pp. 113-14; Hall Dep. 54-55). Plaintiff states that all four, including Greene, met; that she recounted the events of July 28, 2014; that Greene denied her rendition; and that Hinton and Beaulieu told them to put the incident behind them; and that they told Plaintiff to contact Greene directly about any time off work going forward. (12-22-14 Pl.'s Aff. ¶ 28).

Hinton returned to Sutton on August 13, 2014, and hand-delivered a letter to Plaintiff from Pamela Hall, the Chief Human Resource Officer with AISS.[8] (Hall Dep. Ex. 46 (Letter to Plaintiff from Hall, dated August 13, 2014); 12-22-14 Pl.'s Aff. ¶ 29). Plaintiff testified that during this meeting Greene was asked to leave the room; whereas Greene testified that he was never present for this meeting in the first place. (12-22-14 Pl.'s Aff. ¶ 29; Pl.'s Dep. Greene Dep. 114-15). Regardless, that letter explained to Plaintiff that it was a follow-up to the July 30, 2014 meeting and Plaintiff's failure to timely report to work. (Hall Dep. 174-78, Ex. 46). It further explained that the failure would be considered a job abandonment and/or voluntary resignation, because in AISS's view (1) Plaintiff failed to follow protocol for seeking approval for absences, (2) failed to offer any credible evidence providing extenuating circumstances for her failure to

---

[8] Like Greene, Hall started in the Chief Human Resource Officer position in July 2014. (PSMF ¶ 51).

report to work, and (3) failed to provide a consistent explanation or excuse throughout the course of the investigation.  (Hall Dep. 174-78, Ex. 46).  Accordingly, Plaintiff's "resignation" would stand.  (Id.).  The letter mentioned that a separate inquiry into her complaints from the July 30, 2014 meeting regarding retaliation by Sofianos and/or Greene were ongoing by the Office of Internal Compliance, and had nothing to do with the job abandonment decision by Hall in Human Resources.  (Id.).  Hinton went to Plaintiff's work area to gather her things for her (Plaintiff was too emotional), and escorted Plaintiff to her car.  (Pl.'s Dep. 378-79).  At no point did anyone inform Plaintiff that she should return to Sutton, and Plaintiff did not talk to anyone about doing so.  (Pl.'s Dep. 381).

The final decision regarding Plaintiff's employment was a decision from Human Resources and not made by the Principal.  (PSMF ¶ 100).  Hall testified that she made the ultimate decision to deem Plaintiff's absences and associated conduct a job abandonment and/or voluntary resignation; this was based upon information she received from Hinton and/or Beaulieu about absences and Plaintiff's failure to obtain approval for them.  (Hall Dep. 174-77, 181, 197-98; see also Hall Dep. 175 ("I do know that the principal had a conversation with Rick Beaulieu sharing with him that he felt that she had violated this policy and abandoned her position")).  While Hinton had received a package of complaints from Plaintiff the first week in August and reviewed the information relating to Plaintiff's absences in July 2014, she forwarded the information relating to the 2013-2014 school year (complaints not related to the July 2014 absences) to the

Office of Internal Compliance.  (Hall. Dep. 120).  Hinton or another Human Resources employee drafted the August 13, 2014 letter based upon Hall's decision.  (Hall Dep. 178-79).

### I.    Events Following the End of Plaintiff's Employment

The following day, Plaintiff attempted to return to work, since she believed she had not voluntarily abandoned her job.  (Pl.'s Dep. 360, 381; 12-22-14 Pl.'s Aff. ¶ 31).  Greene questioned Plaintiff about why she had returned, and then contacted Hinton, who in turn returned to the school, informed Plaintiff that she was not longer employed by AISS, and escorted her off the premises.  (Pl.'s Dep. 359-61; 12-22-14 Pl.'s Aff. ¶ 31).

Later in August, Plaintiff and her representative met with Hall, who ultimately came to believe Plaintiff's story that she had called the School in relation to her absences.  (PSMF ¶ 86; see also Hall Dep. 149).  Hall offered to assist Plaintiff in finding another position within AISS, if she was willing to go through the formal interview process.  (Hall Dep. pp. 238-40, Ex. 56 (Email from Hall, dated Aug. 25, 2014)).  Plaintiff's representative responded by requesting that Plaintiff be reinstated "at another school with a black principal."  (Id.).  Communications between Plaintiff and AISS then broke down.  (Hall Dep. 239).

### J.    Plaintiff's Internal Complaints

Plaintiff made several complaints internally to the Human Resources Department at AISS.  First, as noted above, in January 2014, during her FMLA leave, Plaintiff sent a letter that, among other things, complained about her relationship with Sofianos and

32

the decision not to give her the Secretary position. (Pl.'s Dep. 97-98; 12-22-14 Pl.'s Aff. ¶ 11, Ex. 1; Doc. 89-56). That complaint did not raise issues in relation to Plaintiff's FMLA leave. (Id.). While Plaintiff was on leave, she contacted Sofiano's supervisor for an update on the January complaint, and an AISS representative then contacted Plaintiff and her husband regarding the complaint and noted, among other things, that Sofianos would not be returning to Sutton at the end of the school year, and therefore filing a grievance against her was unnecessary. (Pl.'s Dep. 106-08). Hall had no personal knowledge of this complaint at the time she made a decision regarding the end of Plaintiff's employment, though she testified at her deposition that she was aware that Plaintiff had made complaints in the past.[9] (Hall Dep. 33, 122-24, 137; Declaration of Pamela Hall, dated July 27, 2016 (Hall Dec.), Doc. 89-57, ¶ 6). Hall did become of aware of the complaint at some point in August. (Id.; see also Hall Dep. 262).

Next, again as discussed, around April 24, 2014, Plaintiff made an internal complaint to AISS, complaining that she was subjected to a "hostile environment" and was discriminated against and harassed by Principal Sofianos. (Pl.'s Dep. 293-40; Doc. 89-55). Plaintiff complained about the vague duties and responsibilities given to her compared to the tasks other Clerks were being asked to perform; her concerns about

---

[9] When Hall stated that she was aware complaints had been filed, it appears to have been made in her capacity as a witness under Federal Rule of Civil Procedure 30(b)(6), and not in her individual capacity or based upon personal knowledge. (Hall Dep. 32-34; see also Hall Dep. 125-26 (she came to know at some point about Hall's FMLA leave for the purposes of being a 30(b)(6) witness, but not based upon any personal knowledge))

33

wasting resources by retaining the hourly employee hired to fill in for her while she was on FMLA leave; and Sofianos failure to schedule a meeting to discuss her job classification. (Id.). She explained only that she is being "targeted and discriminated against for some reason," and only referenced the FMLA in relation to the fact that these incidents had occurred since she returned to work after taking FMLA leave; she did not express that they were the result of taking FMLA leave or that her FMLA rights have been violated. (Id.). Plaintiff's April 2014 complaint was received by Hinton in August 2014, and forwarded to the Office of Internal Compliance. (PSMF ¶ 34; Hall Dep. 137-41, see also Doc. 89-59 (Hinton email forwarding complaint); Pl.'s Dep. 106). On May 21, 2014, Plaintiff separately complained by email about her work area being moved (and her humiliation in response to the move) to Sofianos's supervisor, alleging that it was done in retaliation for filing the January complain. (PSMF ¶¶ 23-25; Pl.'s Dep. Ex. 10; Hall Dep. 139-41, Ex. 41). Sofiano's supervisor told Plaintiff that he spoke with Sofianos, he would share the concerns with the new principal, and suggested Plaintiff do the same. (Hall Dep. 33, 122-24, 137-38, 141-42, 262; Hall Dec. ¶¶ 7-8). Hall also had no personal knowledge of Plaintiff's April and May 2014 complaints at the time she made a decision to end Plaintiff's employment, though again, she testified that she was aware that Plaintiff had made complaints in the past, and became aware of them sometime in August. (Id.).

On July 28 and 30, 2014,[10] Plaintiff complained to Hinton that she had been retaliated against, subjected to a hostile work environment, and that her civil liberties had been violated.  (Hall Dep. 106-108; Doc. 89-59 (Hinton email forwarding complaints). After Plaintiff sent Hinton a pack of information, around August 5, 2014, Hinton submitted an investigation referral to the Office of Internal Compliance Division concerning Plaintiff's complaints regarding the 2013-2014 school year.  (Hall Dep. 252; DSMF ¶ 125).   At some point in August, Plaintiff's complaints, including those discussed both above and below, were forwarded to Hall's desk.  (Hall Dep. 262).

### K.    Plaintiff's External Complaints

On or around May 9, 2014, Plaintiff filed a charge with the EEOC alleging race discrimination and retaliation against AISS.  (DSMF ¶ 142; Doc. 89-68).  On or around June 5, 2014, Plaintiff filed a subsequent charge of race discrimination and retaliation with the EEOC against AISS.  (DSMF ¶ 143; PSMF ¶ 50; Doc. 89-69).  In addition, on or around August 25, 2014, Plaintiff filed a charge with the EEOC alleging further retaliation.  (DSMF ¶ 143; Doc. 89-70).  There is no indication that Plaintiff sought to assert complaints with the EEOC in relation to anything other than discrimination and retaliation on the basis of race.  (Id.).  Hall was aware at some point of Plaintiff's EEOC charges and actually recalled seeing the June charge of discrimination because the response was prepared during her tenure and Plaintiff's dismissal was sent to her.

---

[10]    July 28 and 30, 2014, are dates Plaintiff met with Greene and Hinton, respectively.

(PSMF ¶ 53).

## II.   **LEGAL ANALYSIS**

### A.   **Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of asserting the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required, however, to negate its opponent's claim; the movant may discharge its burden by merely "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  After the movant has carried its burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet his burden through affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324 (quoting Fed. R. Civ. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is material when it is identified as such by the controlling substantive law.  Id. at 248.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."  Anderson, 477 U.S. at 249-50.  Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

## B.   **Plaintiff's Federal Claims**

Plaintiff has alleged federal claims under a single statute – the FMLA.[11]  Plaintiff

---

[11] A writ of mandamus is a separate state cause of action from any federal due process claim.  Cotton, 216 F.3d at 1332-33.  "Federal district courts do not have the authority to issue writs of mandamus to direct state officials in the performance of their duties."  Church of Scientology of Ga., Inc. v. City of Sandy Springs, Ga., 843 F. Supp. 2d 1328, 1380 (N.D. Ga. 2012) (citing 28 U.S.C. § 1361; Moye v. Clerk, Fulton Superior Ct., 474 F.2d 1275, 1276 (5th Cir. 1973)).  (In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions delivered on or before September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981).).  Furthermore, Plaintiff cannot avoid the denial of her Motion to Amend by asserting a Section 1983 claim now in response to Defendants Motion for Summary Judgment.  "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."

alleges that AISS violated the FMLA by interfering with her FMLA rights and for taking FMLA leave.  In particular, Plaintiff claims that (1) Sofianos's decision not to interview her for the Secretary position because she was on FMLA leave constituted FMLA interference; (2) Sofianos's harassment and treatment upon her return from FMLA leave at the end of the 2013-2014 school year was retaliation for taking FMLA leave; as was (3) her termination at the beginning of the 2014-2015 school year.  (Sec. Am. Compl. ¶¶ 84-99).  Defendants argue Plaintiff cannot establish a claim for either FMLA interference or retaliation.

The FMLA grants an eligible employee the right to take up to twelve work weeks of unpaid leave annually for any one or more of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The FMLA also provides for reinstatement into the same or equivalent position following such leave.  29 U.S.C. § 2614(a)(1).  Moreover, the FMLA creates a cause of action to seek equitable relief and compensatory damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights.  29 U.S.C. §§ 2615(a)(1), 2617(a); Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 724 (2003); Hurlbert v. St. Mary's Health Care Sys., 439 F.3d 1286, 1293 (11th Cir. 2006).  Based upon that statutory language, Courts have recognized that Section 2615(a) of the FMLA creates two types

---

Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam).

of claims:

> [I]nterference claims, in which an employee asserts that his employer
> denied or otherwise interfered with his substantive rights under the Act,
> and retaliation claims, in which an employee asserts that his employer
> discriminated against him because he engaged in activity protected by
> the Act.

Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199,

1206 (11th Cir. 2001) (internal citations omitted).

### 1.    Plaintiff's FMLA Interference Claim

In this case, Plaintiff alleges that her FMLA rights and/or benefits were interfered

with because her FMLA leave was considered during the hiring process for the open

Secretary position – the facts now showing that she was not interviewed or ultimately

considered for the open Secretary position because she was unavailable while on FMLA

leave.  To establish an interference claim, the employee must demonstrate that she was

entitled to FMLA benefits which were denied.  Hurlbert, 439 F.3d at 1293-94; Wilson

v. NHB Indus., 219 F. App'x 851, 852 (11th Cir. 2007).  The employee is not required

to prove a causal nexus between her request for leave and an adverse action; that is, the

employer's motive is irrelevant.  Spakes v. Broward Cty. Sheriff's Office, 631 F.3d

1307, 1309 (11th Cir. 2011); Martin v. Brevard Cnty. Schs., 543 F.3d 1261, 1265 (11th

Cir. 2008).  A defendant, however, may raise lawful reasons for the interference with or

denial of a right as an affirmative defense to liability.  Spakes, 631 F.3d at 1309-10.  For

example, if an employer discharged an employee who was on FMLA leave – thereby

depriving her of her protected twelve weeks of leave – demonstrates that it would have

discharged an employee for a reason unrelated to the FMLA leave, the employer is not liable for FMLA interference.  Id.

Plaintiff does not dispute that she was granted the required twelve weeks of leave, nor does she argue that she was denied any particular right or benefit she was entitled to under the FMLA.  More to the point, Plaintiff has not provided any evidence that Sofiano's purported comments – that she was not considered for the Secretary position while on FMLA leave – served to interfere, obstruct, or discourage Plaintiff from taking her statutory leave under the FMLA.  See 29 C.F.R. § 825.220(b).  For this reason alone, Plaintiff's interference claim fails.

Moreover, the FMLA provides no relief unless an employee has suffered a prejudice or impairment to her rights under the FMLA.  Here, Plaintiff failed to present evidence that she suffered any prejudice to her FMLA rights or benefits as a result of Sofiano's comment since Plaintiff did in fact take all of her leave.  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89-90 (2002); Rossi v. Fulton Cty., Ga., No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213268, at *16 (N.D. Ga. Feb. 11, 2013), report and recommendation adopted, No. 1:10-CV-4254-RWS, 2013 WL 1213139 (N.D. Ga. Mar. 22, 2013).

Finally, as noted, a defendant may raise lawful reasons for the plaintiff's termination as an affirmative defense avoid liability.  Spakes v. Broward Cty. Sheriff's

<u>Office</u>, 631 F.3d 1307, 1309-10 (11th Cir. 2011).[12]  The employer bears the burden of proving that it would have taken the action regardless of the employee's request for leave.  <u>Schaaf v. Smithkline Beecham Corp.</u>, 602 F.3d 1236, 1241 (11th Cir. 2010); <u>Krutzig</u>, 602 F.3d at 1236.  Here, Defendants provide undisputed evidence showing that Plaintiff was not interviewed or considered for the open Secretary position because the position needed to be filled while Plaintiff was unavailable to fill it  – irrespective of the reason Plaintiff was unavailable.  As a result, Defendants have shown that it was Plaintiff's unavailability, not the fact that the unavailability provide Plaintiff with cause to take FMLA leave, that served as the basis for Defendants' decision not to interview and consider Plaintiff for the Secretary position.  For each of these reasons, Plaintiff cannot maintain a cause of action for interference under the FMLA.  <u>Penaloza v. Target Corp.</u>, 549 F. App'x 844, 847 (11th Cir. 2013)).

Plaintiff makes the novel argument in opposition to summary judgment that since there is evidence showing that Plaintiff was told she was not interviewed for the open Secretary position because she was not available because she was taking FMLA leave,

---

[12] At this stage, an employer may present, for instance, traditional evidence showing the lack of a causal connection such as that its decisionmakers were not aware that the employee requested FMLA leave.  <u>McCarroll v. Somerby of Mobile, LLC</u>, 595 F. App'x 897, 900-01 (11th Cir. 2014) (explaining that although a causal nexus is not an element of an interference claim, the employer is not liable if it can prove that it made the challenged decision before the employee ever requested leave because such evidence demonstrates that the employer would have discharged the employee for a reason wholly unrelated to the FMLA leave).

AO 72A
(Rev.8/82)

she has direct evidence of interference or retaliation.[13]   (Doc. 118-1, pp. 26-27).

However, Plaintiff has cited no authority[14] for this proposition, and for good reason:

> Following [Plaintiff's] logic, an employer would be unable to fill any position while an employee is on FMLA leave . . . .  This Court notes that the FMLA does not even require that an employee be reinstated to her same position after her FMLA leave ends.  See 29 U.S.C. § 2614(a)(1) (allowing an employee to be reinstated to an "equivalent position").  Requiring an employer to leave open any particular position while an employee is on FMLA leave is an even more drastic measure, which the FMLA does not require.

Freeman v. Koch Foods of Ala., 777 F. Supp. 2d 1264, 1291 n.15 (M.D. Ala. 2011)

(rejecting retaliation claim when Plaintiff was not considered for a position because she

---

[13] The Eleventh Circuit has held that "Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)."  Hurlbert, 439 F.3d at 1297(citing Gilmour, 382 F.3d at 1315) (refusing to allow FMLA plaintiff to assert new basis for interference claim at summary judgment state).  At the pleading stage in this action, the Court discussed that Plaintiff's Amended Complaint did not state a claim for FMLA interference under these facts, but might plausibly suggest one for retaliation (see Docs 14, 21), yet Plaintiff's Second Amended Complaint did not recast the claim as one for retaliation, instead reiterating her claim for interference basically verbatim. (Compare Docs. 11-3, 23).  As such, Plaintiff has only properly alleged a claim for interference in relation to not being interviewed for the open Secretary position.

[14] Plaintiff does cite briefly to 29 C.F.R. § 825.220(c) to argue that an employer cannot use "FMLA leave as a negative factor in employment actions, such hiring"; however, by its own terms, that provision applies to decisions made after an employee has taken FMLA leave.  Here, Plaintiff was on leave and unable to work at the time the decision was made.  The FMLA does not require reinstatement or consideration for promotion, if an employee "is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition." 29 C.F.R. §§ 825.214, 825.216(c); see also Grace v. Adtran, Inc., 470 F. App'x 812, 816 (11th Cir. 2012).  Here, Plaintiff was unable to perform her own job or accept a job promotion.

42

was on FMLA leave).  The undisputed testimony demonstrates that Plaintiff was on leave indefinitely, and that an open position needed to be filled; the FMLA does not require that Defendants hold that position available for Plaintiff until she returns from leave. Freeman, 777 F. Supp. 2d at 1290-91.  Plaintiff has shown only that Defendants did not hold the Secretary position open for her while she was on FMLA leave when there was an immediate need to fill the position.[15]   Accordingly, Plaintiff's claim for FMLA interference or retaliation based upon Sofianos's decision not to interview Plaintiff while she was on FMLA leave fails, and Defendants Motion for Summary Judgment should be granted with regard to that claim.[16]

## 2.    Plaintiff's FMLA Retaliation Claims

Plaintiff also alleges AISS retaliated against her in violation of the FMLA based upon her (1) treatment upon her return from FMLA leave at the end of the 2013-2014 school year, and (2) termination at the beginning of the 2014-2015 school year. Defendants contend that summary judgment should be granted with regard to Plaintiff's FMLA retaliation claims first, because Plaintiff did not suffer from any materially

---

[15] (See Pl.'s Dep. 120 ("Q:  Do you think she should have waited until you returned from FMLA leave . . . to interview you [] before she filled the position.  A: She should have waited.").

[16] Even if Plaintiff were to recast this claim as one for retaliation, her claim still fails. Plaintiff does not rebut Defendants' legitimate non-discriminatory reason for not interviewing her:  that interviews occurred while she was on leave and unavailable to work, irrespective of why she was unavailable.  Freeman, 777 F. Supp. 2d at 1291 n.16.

AO 72A
(Rev.8/82)

adverse action as a result of Sofianos's action; and second, because she cannot prove a causal connection between her FMLA leave and termination.

An employee proves retaliation under the FMLA when she shows that her employer intentionally discriminated against her because she exercised a FMLA right. Martin v. Brevard Cty. Schs., 543 F.3d 1261, 1267-68 (11th Cir. 2008).  In the absence of direct evidence, as in the instant case, retaliation claims follow the McDonnell Douglas burden-shifting framework.  Id.  Unlike an interference claim, an employee bringing a retaliation claim faces the "increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Martin, 543 F.3d at 1267-68.  To make out a prima facie case of retaliation, then, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action by the employer simultaneously with or subsequent to such protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action.  Martin, 543 F.3d at 1268.

Once the plaintiff makes out his prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1244 (11th Cir. 2010); Martin, 543 F.3d at 1268.  "If the defendant offers legitimate reasons, the presumption of retaliation disappears," and "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Schaaf, 602 F.3d at 1244; Martin, 543 F.3d at 1268.

44

a.   Plaintiff's Treatment at the End of the 2013-2014 Year

Defendants contend that the incidents that occurred during the last month of the 2013-2014 school year are not sufficiently material to constitute an adverse employment action for the purposes of making out a prima facie case of retaliation.  This Court agrees.  While adverse actions are not limited to ultimate employment decisions, such as termination, "not everything that makes an employee unhappy is an adverse action," and to be actionable, conduct must "alter[] an employee's compensation, terms, conditions or privileges of employment."  Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002).  In order to do, an employee must show a "serious and material change" in the terms, conditions or privileges of employment in a real and demonstrable way.  Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001).

In this case, Plaintiff testified that over the period of a little more than a month, she was generally given more and/or different work than other co-workers, had her work area moved next to another Clerk in the front of the building, and was deprived of her computer and telephone, culminating in her feeling humiliated in front of co-workers, students, and parents.  Plaintiff was not demoted, did not suffer any loss in salary or benefits, and the actions above cannot show that any serious or material change in her working conditions.  In terms of the type and amount of work Plaintiff was given, Plaintiff could not explain what those changes were or how they materially effected her working conditions.  (See 12-22-14 Pl.'s Aff. ¶ 6); Pl.'s Dep. 94-95).  Moreover, for FMLA purposes, "a reassignment of duties cannot constitute retaliatory discrimination

where, as here, both the former and present duties fall within the same job description."[17] DuChateau v. Camp Dresser & McKee, Inc., 822 F. Supp. 2d 1325, 1338 (S.D. Fla. 2011), aff'd, 713 F.3d 1298 (11th Cir. 2013) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).   Similarly, the temporary change in Plaintiff's working area (to a space next to another Clerk) and loss of computer and phone, so that Plaintiff could assist with year-end projects and registration do not seriously alter the terms, conditions, or privileges of her employment.  See e.g., Bozeman v. Per-Se Techs., Inc., 456 F.Supp.2d 1282, 1345 (N.D. Ga. 2006) ("shunning or ostracism by co-workers and supervisors is insufficient to sustain a retaliation claim"); Whitehead v. Norfolk Southern Ry. Co., 53 F. Supp. 2d 1380, 1382-83 (M.D. Ga. 1999) (holding that plaintiff's transfer from the north end to the south end of the yard did not constitute adverse employment action); Pier v. Advance/newhouse, P'ship, No. 8:13-CV-1052-T-33TGW, 2014 WL 12573540, at *9 (M.D. Fla. Mar. 5, 2014), report and recommendation adopted, No. 8:13-CV-1052-T-33TGW, 2014 WL 12575827 (M.D. Fla. Mar. 25, 2014) (belief that employer grew tired of plaintiff's FMLA leave was irrelevant); DuChateau, 822 F. Supp. 2d at 1338 (reassignment of duties within job description not material); Bender v. City of Clearwater, No. 8:04-CV-1929-T23EAJ, 2006 WL 1046944, at *13 (M.D. Fla. Apr. 19, 2006) (plaintiff made vague allegations that city's actions were "insulting, demeaning and oppressive," but only showed

---

[17] (See also 89-19 (School Clerk job description)).

"restriction on the use of her laptop or email").[18]  As such, Plaintiff cannot show that she suffered from an material adverse employment action as it relates to her treatment at the end of the 2013-2014 school year, and Plaintiff's FMLA retaliation claim based upon it is subject to summary judgment.

    b. <u>Ending of Plaintiff's Employment in the 2014-2015 Year</u>

   Finally, in addressing Plaintiff's end of employment, Defendants argue that (1) Plaintiff voluntarily abandoned her position, and therefore did not suffer an adverse employment action; (2) the length of time between any protected activity and is too long to establish causation; (3) that the decision-maker with regard to the end of Plaintiff's employment was unaware of Plaintiff engaging in any protected activity under the FMLA at the time of the decision ending her employment; and that (4) the decision to end Plaintiff's employment was based entirely upon Plaintiff's absences, and not activity protected by the FMLA.

   Even assuming that Plaintiff was terminated, Plaintiff cannot establish that her termination was causally connected to her taking FMLA leave.[19]  As an initial matter,

---

[18] The Eleventh Circuit has assumed that the "material adversity" standard of <u>Burlington Northern</u> from other anti-discrimination and retaliation statutes applies to retaliation claims under the FMLA.  <u>See</u> <u>Foshee v. Ascension Health-IS, Inc.</u>, 384 F. App'x 890, 891-92 (11th Cir. 2010) (per curiam).

[19] The parties point to no other FMLA protected activity, and Plaintiff does not suggest that her complaints of discrimination or harassment themselves constitute protected activity under the FMLA; as discussed above, those complaints do not contend that Plaintiff's FMLA rights were violated or that she was being retaliated for taking leave.

Plaintiff seeks to establish causation solely using temporal proximity.  (See 188-1, pp. 28-29, 31-32).  Plaintiff returned from FMLA leave on April 21, 2014, worked until June 4, 2014, and then again worked from July 28, 2014, until August 13, 2014, when her employment ended.  Thus, almost four months passed between Plaintiff taking FMLA leave and the termination of her employment.  Plaintiff urges that the summer break should be excluded from the calculation, citing to authority holding that certain time periods may be excluded when an employer retaliated against the employee at the first opportunity it had.  (188-1, at 29, n.39).   This Court finds that such authority is inapplicable here.  Plaintiff returned to work for more than a month before departing on summer break, and as noted above, no materially adverse employment actions took place during that period.   Neither Sofianos, Sofianos's supervisor, nor Hall's predecessor took any action or signaled any intention to end Plaintiff's employment; and they had ample time to do so during that period.  As a result, the full four month time period between Plaintiff's FMLA leave and the termination of her employment should be considered, and as such, the temporal proximity is too attenuated to establish causation.   See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).   Even by Plaintiff's calculations[20] – excluding summer break – Eleventh Circuit decisions have held that periods as short as the two months that Plaintiff was actively working before her employment ended is too much of a delay to allow an inference of causation.  Williams v. Waste Mgmt., Inc., 411 F. App'x. 226, 229-30 (11th Cir. 2011) (two month

---

[20] (See Doc. 118-1, pp. 29-30)

gap was "close" but did not satisfy "very close" requirement to establish causation). For

this reason, Plaintiff still fails to establish causation.

Regardless, while close temporal proximity can provide circumstantial evidence

to great a genuine issue of fact on causation at summary judgment, it does not do so

when there is "unrebutted evidence that the decision maker did not have knowledge that

the employee engaged in protected conduct" under the FMLA.  Hurlbert, 439 F.3d at

1298 (quoting Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir.

2000).  That is because:

> [C]lose proximity in time between the protected activity and the adverse
> employment decision does not, standing alone, establish the third
> element of a prima facie case. Instead, the close proximity merely
> buttresses other evidence (direct or circumstantial) in the case indicating
> that the decision maker had notice of the protected activity.

Strickland, 239 F.3d at 1208 n.11.  In this case, the unrebutted testimony of Hall is that

she was unaware that Plaintiff had engaged in protected activity at the time she decided

Plaintiff's absences constituted job abandonment that caused her (Hall) to end Plaintiff's

employment.  Additionally, there is no evidence that establishes that Hall knew of

Plaintiff's FMLA leave or any other FMLA-protected activity at the time Hall ended

Plaintiff's employment with AISS.[21]  Hall testified that it was only afterward in August

---

[21] Plaintiff cites testimony that Hall made that she (Hall) eventually became
aware of Plaintiff's FMLA leave; however, that testimony is clear that Hall was
"merely speaking to what [she] was told and not what [she] observed [her]self" –
apparently in her capacity as a Rule 30(b)(6) witness – and, more importantly, does not
address when Hall learned of it. (Hall Dep. 125-26).  Likewise, Plaintiff points to the
fact that the August 13, 2016 dismissal letter acknowledges that Plaintiff raised
concerns of retaliation during the August 30, 2014 meeting to show that Hall was

2014 that she learned of the full extent of Plaintiff's Complaints.  Accordingly, for this separate reason, Plaintiff cannot establish causation, and her FMLA retaliation claim fails on this separate basis.

Based upon the foregoing reasons, Defendants Motion for Summary Judgment should be **GRANTED** as to Plaintiff's claims under the FMLA.

### C.    Plaintiff's State Law Claims

Because the Court has recommended that summary judgment be granted as to Plaintiff's federal law claims, the undersigned now recommends that Plaintiff's state law claims be remanded to the Superior Court of Fulton County.  According to 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court explained that exercising supplemental jurisdiction requires a federal court to consider judicial economy, convenience, fairness, and comity.  The Court held that:

> When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of a lawsuit in its early stages and only state-law claims remain, the federal court should

---

aware of Plaintiff's FMLA leave and/or FMLA protected activity.  However, Hall was not in attendance during the August 30, 2014 meeting (Hall Dep. 118-119); understood the meeting to be related only to Plaintiff's absences and "miscommunications" with Plaintiff's principal(s) (id.); and made the decision regarding Plaintiff's employment before that letter was drafted (Hall Dep. 178-79).  Moreover, someone else in Human Resources drafted the letter, and Hall clearly testified that in making the decision, she only discussed with Hinton and/or Beaulieu the dispute regarding Plaintiff's absence and/or possible excuses for it (Hall Dep. 118-120, 174-79, 181, 197-98; see also Hall Dec. ¶¶ 3-10).

decline the exercise of jurisdiction by dismissing the case without prejudice.

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted); see also Novak v. Cobb Cnty. Kennestone Hosp. Auth., 849 F. Supp. 1559 (N.D. Ga. 1994) (dismissing state law claims without prejudice upon granting summary judgment on all pending federal claims), aff'd, 74 F.3d 1173 (11th Cir. 1996).  Because it is recommended that summary judgment be granted as to Plaintiff's federal claims, Plaintiff's only remaining claims rely on applicable state law and it is still early enough in the lawsuit.  The undersigned therefore **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction as to Plaintiff's state law claims and that they be **REMANDED** to the Superior Court of Fulton County.  See Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1226 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction.").[22]

## CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** with regard to Plaintiff's federal law

---

[22] Because the Court does not reach the merits of Plaintiff's state law claims, it does not consider Defendants' Notice of Supplemental, Persuasive Authority in support of their Motion for Summary Judgment, relating to newly issued authority regarding GOMA claims (which, in any event, would have be better submitted in a motion for reconsideration).  Plaintiff's Motion for Sanctions, asking that the Court strike and/or exclude the submission is therefore **DEEMED MOOT**. (Doc. 139). As with the Motion to Strike, to the extent Plaintiff seeks default judgment, attorney's fees, or other sanctions, the Motion for Sanctions is **DENIED**, given the lack of evidence of bad faith.  (Doc. 139).

AO 72A
(Rev.8/82)

claims, and that Plaintiff's state law claims be **REMANDED** to the Superior Court of Fulton County. (Doc. 89). Additionally, Plaintiff's Motion to Amend is **DENIED** (Doc. 123), Motion to Extend is **GRANTED** (Doc. 129), Motion to Strike is **DEEMED MOOT**, and Motion for Sanctions is **DEEMED MOOT** (139).

  **SO ORDERED and REPORTED AND RECOMMENDED**, this __8__ day of February, 2017.

      /s/LINDA T. WALKER     
      LINDA T. WALKER
      UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRANCHESA AKINS and
ATLANTA ASSOCIATION OF
CLASSIFIED EMPLOYEES

      Plaintiffs,

v.

                             CIVIL ACTION NO.
                             1:15-CV-0364-ELR-LTW

ATLANTA INDEPENDENT SCHOOL
SYSTEM, et al.,

      Defendants.

**ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

      Attached is the report and  recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

      Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation **within fourteen (14) days of the receipt of this Order**.  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court.  If no objections are filed, the report and recommendation may be adopted as the

opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015); 11th Cir. R. 3-1.  In the absence of a proper objection, however, the appeals court may review the matter on appeal for plain error if necessary in the interest of justice. Mitchell, 612 F. App'x at 545; 11th Cir. R. 3-1.

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**SO ORDERED**, this   8   day of February, 2017.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE